**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **MATTHEW C. ZORN**, |
| Plaintiff, |
| v. |
| **U.S. DEPARTMENT OF JUSTICE, DRUG ENFORCEMENT ADMINISTRATION**, |
| Defendants. |

Case No. 24-cv-03360 (CRC)

## MEMORANDUM OPINION AND ORDER

Marijuana legalization has long divided the public. Apparently, it also divides the current Administration. In October 2022, President Biden directed federal agencies to reevaluate marijuana's regulatory status under the Controlled Substances Act. After further deliberations within the executive branch, the Attorney General signed a notice of proposed rulemaking to reschedule marijuana and thereby reduce some of the legal restrictions on its use. According to press reporting, the Attorney General signed the notice over the objections of the Drug Enforcement Administration ("DEA"). Before the proposed rulemaking was made public, someone affiliated with a group opposed to rescheduling marijuana posted on social media that the DEA Administrator had not signed off on it. When asked how he knew of this fact ahead of the proposal's release, the person quipped that he had "friends in low places."

Attorney Matthew Zorn, who represents parties involved in the rulemaking, took those posts to mean that DEA employees had improperly leaked word of the Administrator's recalcitrance. Zorn filed a request under the Freedom of Information Act ("FOIA") seeking DEA emails related to any potential leaks, and now seeks a preliminary injunction ordering the agency to immediately process his request. The Court will deny Zorn's motion because he has

not demonstrated irreparable harm, his request is overly burdensome, and the equities do not

support granting extraordinary relief.

**I.    Background**

A.    Rescheduling Marijuana

Under the Controlled Substances Act, substances are classified under one of five

"schedules."  See 21 U.S.C. § 812.  Drugs in Schedule I are subject to the strictest regulations

while those in Schedule V are subject to the least strict.  See generally id. §§ 821–32, 841–65,

951–71.  Marijuana is a Schedule I substance, a classification for drugs that do not have any

"currently accepted medical use in treatment in the United States."  Id. § 812(b)(1)(B), (c).

Lamenting "our failed approach to marijuana," in 2022, President Biden directed the

Department of Justice and the Department of Health and Human Services to reevaluate the

drug's classification.  Statement from President Biden on Marijuana Reform, The White House

(Oct. 6, 2022), https://perma.cc/L9K7-C26D.  About a year and a half later, the Department of

Justice formally proposed rescheduling marijuana from Schedule I to Schedule III.  Schedules of

Controlled Substances: Rescheduling of Marijuana, 89 Fed. Reg. 44597, 44597 (May 21, 2024).

The Attorney General, rather than the DEA Administrator, signed the notice of proposed

rulemaking.  See id. at 44622.  According to press reporting, DEA has "long resisted"

rescheduling marijuana.  Joshua Goodman & Jim Mustian, Top U.S. Drug Agency A Notable

Holdout in Biden's Push to Loosen Federal Marijuana Restrictions, AP (May 20, 2024),

https://apnews.com/article/marijuana-pot-dea-legalization-biden-

cb7869d3286094f0124de728320d89c1.

Following the rulemaking notice, the DEA appointed an administrative law judge to

oversee a formal rulemaking process and named a 25-member panel of marijuana groups and

experts to participate in the hearings.  Mot. at 4.  That panel includes Smart Approaches to Marijuana ("SAM"), a group opposed to rescheduling.  Id. at 3.  Hearings are scheduled to begin on January 21, 2025, and run through March 6, 2025.  Mot. Reply, Ex. 7 at 6.

        B.  Zorn's FOIA Request

About one week before DOJ published notice of the proposed rulemaking, Dr. Kevin Sabet, who is affiliated with SAM, posted on social media that the DEA Administrator "did NOT sign the rescheduling order, breaking with five decades of precedent and established law and regulations[.]"  Mot. at 3.  As support, Dr. Sabet cited "two confidential sources inside DEA and another outside DEA[.]"  Id.  When someone asked Dr. Sabet how he knew about the Administrator's refusal in advance, he posted that he had "friends in low places."  Id.

Rescheduling proponents took these posts to mean that someone at DEA had engaged in improper *ex parte* contacts with Dr. Sabet.  Two groups raised this issue with the presiding ALJ and asked him to "remov[e] the DEA and its Administrator as the sponsor and proponent of the proposed rescheduling action" and for other relief.  Compl., Ex. 3 at 1–2.  The ALJ denied that motion, explaining that while he found the allegations "distasteful," he lacked authority to grant the relief sought.  Id. at 2.  The ALJ also viewed the record as insufficient to conclude that "the agency's decisonmaking process has been or would be irrevocably tainted so as to make the ultimate judgment of the agency unfair[.]"  Id. at 7 (cleaned up).

Zorn tried a different approach and filed a FOIA request with DEA seeking emails related to the purported contacts.  Specifically, he requested all DEA emails between October 1, 2022, and October 29, 2024, with the following keywords:

1. Marijuana; AND

2. Rescheduling or proceeding; AND

3. Sabet OR "smart approaches for marijuana" OR SAM OR Torridon OR Niforatos OR kevin OR barr OR shea

Mot. at 4–5. ("Torridon," "Niforatos," "Barr," and "Shea" refer to other individuals or entities affiliated with SAM. Opp'n at 3–4.) After DEA did not respond, Zorn filed this lawsuit and moved for a preliminary injunction. DEA then denied Zorn's FOIA request and opposed the preliminary injunction on the ground that Zorn's initial request was unduly burdensome. Id. at 1–2. In response, Zorn proposed narrowing his FOIA request to emails "from those DEA employees engaged in the *ex parte* contacts." Mot. Reply at 2.

The government then moved for summary judgment and filed a declaration supporting its undue-burden arguments. Because Zorn has filed an amended complaint, the Court will deny the government's motion as moot and permit the government to file another responsive pleading within 30 days of the amended complaint. The Court will, however, construe the government's motion as a sur-reply for purposes of Zorn's preliminary-injunction motion and consider the arguments contained therein and the supporting declaration. See 11A Fed. Prac. & Proc. Civ. § 2949 ("Affidavits are appropriate on a preliminary-injunction motion and typically will be offered by both parties.").

## II.    Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Nat. Res. Def. Council, 555 U.S. 7, 24 (2008). A party seeking such relief must, "by a clear showing, carr[y] the burden of persuasion" and demonstrate "(1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that

the public interest would be furthered by the injunction." <u>Chaplaincy of Full Gospel Churches v.</u> <u>England</u>, 454 F.3d 290, 297 (D.C. Cir. 2006); <u>Winter</u>, 555 U.S. at 20.  The last two factors merge when the government is a party.  <u>Nken v. Holder</u>, 556 U.S. 418, 435 (2009).

Preliminary injunctions are especially unusual in FOIA cases.  Such an order "effectively allows the requestor to jump the queue in front of other requesters who have been waiting patiently for the agency's response to their requests, including requests that are subject to expedited processing.  Very few cases are that urgent." <u>Am. Oversight v. Dep't of State</u>, 414 F. Supp. 3d 182, 184–85 (D.D.C. 2019).  A preliminary injunction in a FOIA case also effectively gives the requestor all the relief he seeks, but without the ordinary litigation process.  That result is contrary to the D.C. Circuit's general instruction that "a preliminary injunction should not work to give a party essentially the full relief he seeks on the merits." <u>Dorfmann v. Boozer</u>, 414 F.2d 1168, 1173 n.13 (D.C. Cir. 1969) (per curiam).

**III.   Analysis**

The Court will deny Zorn's motion because he has not demonstrated that irreparable harm is likely, that he has a likelihood of success on the merits, or that the equities require granting extraordinary relief.

**A.  <u>Irreparable Harm</u>**

The Court begins its analysis of Zorn's motion with irreparable harm because "it is what justifies the extraordinary remedy of granting relief before the parties have had the opportunity fully to develop the evidence and fully to present their respective cases." <u>Jubilant DraxImage Inc. v. U.S. Int'l Trade Comm'n</u>, 490 F. Supp. 3d 169, 188 (D.D.C. 2020) (quotation marks omitted).  "A movant's failure to show any irreparable harm is therefore grounds for refusing to

issue a preliminary injunction, even if the other three factors entering the calculus merit such relief." Chaplaincy, 454 F.3d at 297.

To obtain a preliminary injunction, Zorn must "clear a high standard" and prove that he faces a "certain and great" injury that necessitates immediate relief. Alpine Sec. Corp. v. FINRA, 121 F.4th 1314, 1332 (D.C. Cir. 2024) (cleaned up). Here, Zorn claims he will be irreparably injured if the requested documents are not immediately disclosed. The problem, however, is that Zorn offers no reason to think that any documents showing *ex parte* contacts would be uncovered by his FOIA request. While Dr. Sabet's social media posts suggest that someone from DEA disclosed information about the proposed rulemaking to an interested third-party, Zorn provides no evidence that any such disclosure occurred over a DEA email. For instance, Dr. Sabet's claimed contacts at the DEA could have met him face-to-face, spoken to him over the phone, or texted him from a personal cellphone. None of those modes of communication (which perhaps were more likely given the purported content) would be captured by Zorn's proposed search of DEA's email server. If the requested documents do not actually exist, then Zorn is not harmed by the agency's failure to disclose them. Without further proof of the records' existence, Zorn has not met his burden of showing a certainly impending injury.

Even if the records exist, Zorn has not made a sufficiently compelling showing of irreparable injury. Courts have found irreparable harm in FOIA cases where the documents are "time-sensitive and highly probative, or even essential to the integrity, of an imminent event, after which event the utility of the records would be lessened or lost." Heritage Found. v. EPA, No. 23-cv-748 (JEB), 2023 WL 2954418, at *4 (D.D.C. April 14, 2023). For example, courts have found irreparable harm in FOIA cases seeking documents pertaining to then-President Trump's pending impeachment proceedings, and documents related to political interference with

mail-in voting in the months before the 2020 presidential election.  Id. (canvassing cases); see

Am. Oversight, 414 F. Supp. 3d at 185 (finding irreparable harm where documents "potentially

[went] to the heart of one of the issues that the Congress [was] considering" during then-

President Trump's first impeachment).

       Zorn has not shown that the records he seeks are essential to the rulemaking's integrity.

The ALJ is already aware of the alleged *ex parte* contacts.  As he observed, the contacts were

publicly disclosed to "the world through social media" and flagged to him months before the

hearings began.  Compl., Ex. 3 at 7.  And, on this early record, the Court sees little relationship

between the alleged contacts and the ultimate merits of whether marijuana should be

rescheduled.  See Pro. Air Traffic Controllers Org. v. FLRA, 685 F.2d 547, 563 (D.C. Cir. 1982)

("If, however, the [*ex parte*] communication is truly not relevant to the merits of an

adjudication[,] . . . disclosure is unnecessary.").

       Furthermore, the records would not suddenly lose their utility once the rulemaking

concludes.  The Court agrees that there is some interest in the records' immediate disclosure

because the rulemaking is currently pending and concerns a somewhat high-profile issue.  But a

party could use any records to challenge any rule promulgated by the DEA years after the rule's

promulgation should the records reveal a connection between the merits and any improper

contacts.  The same cannot be said of an impeachment or an election, neither of which can be

readily challenged like ordinary agency action can.  And while the requested records may lose

some relevance if they are disclosed later, "[p]ublic critiques of how" an agency handles a matter

"have no expiration date[.]"  Heritage Found., 2023 WL 2954418, at *5; see also Landmark

Legal Found. v. EPA, 910 F. Supp. 2d 270, 278 (D.D.C. 2012) (finding no irreparable harm

where the requester sought documents in connection with a pending rulemaking because the

requester could "still submit public comments to the proposed rule" with or without the requested documents).

    B.  <u>Likelihood of Success on the Merits</u>

    Zorn also has not demonstrated a likelihood of success on the merits because his request is overly burdensome.  "An agency need not honor a [FOIA] request that requires an unreasonably burdensome search."  <u>Am. Fed. of Gov't Emps. v. Dep't of Comm.</u>, 907 F.2d 203, 209 (D.C. Cir. 1990) (quotation marks omitted).  Here, Zorn's original request asks for all the emails in DEA's possession over a two-year period that include frequently used words within the agency (marijuana, rescheduling, proceeding) and very common names (Sam, Kevin). According to a declaration filed by DEA in support of its summary judgment motion, a search using those keywords yielded 456,551 emails.  Davis Decl. ¶ 9.  Assuming that each email is one page long and that DEA can process 500 pages per month, DEA would need 76 years to process all the emails.  <u>Id.</u> ¶ 10.  The Court has little difficulty concluding that such a burden is unreasonable.  <u>See</u> <u>Ayuda, Inc. v. FTC</u>, 70 F. Supp. 3d 247, 275–76 (D.D.C. 2014) (holding that a search requiring more than 8,000 hours of work was unreasonable).

    Zorn concedes that the government's burden argument is "correct[]" and "[a]dmittedly . . . a good one."  Mot. Reply at 2.  He instead purports to narrow his request to emails with the original keywords "but only from those DEA employees engaged in the *ex parte* contacts." <u>Id.</u>

    As a threshold matter, the Court agrees with Zorn and other courts in this district that a plaintiff may, at least prior to summary judgment, unilaterally narrow his own FOIA request.  As Judge Bates put it, "FOIA requests are frequently clarified or modified even after a lawsuit is filed.  To deny that possibility might be to deny any prospect of compromise or settlement in FOIA cases."  <u>People for Am. Way v. DOJ</u>, 451 F. Supp. 2d 6, 12 (D.D.C. 2006); <u>accord</u>

Leopold v. USCIS, 560 F. Supp. 3d 189, 197–98 (D.D.C. 2021). Moreover, as the government recognizes, Zorn could refile his revised FOIA request and, if necessary, sue again, returning "to precisely the same position in which the parties now stand." People for Am. Way, 451 F. Supp. 2d at 11. Under those circumstances, "[i]t would be senseless and inefficient" to woodenly hold Zorn to an overbroad request and send him—and the government—back to square one. Id.

The cases cited by the government do not change the analysis. In National Security Counselors v. CIA, 969 F.3d 406 (D.C. Cir. 2020), the plaintiff filed an overbroad FOIA request with the CIA and "did not refine its request after the CIA invited it to do so." Id. at 410 (quotation marks omitted). In light of the plaintiff's decision, the D.C. Circuit held that the CIA was not required to respond to the overbroad request, nor was it required to narrowly construe the request into something reasonable. Id. Similarly, in Brody v. DOJ, No. 22-5043, 2023 WL 1511679 (D.C. Cir. Feb. 3, 2023), the plaintiff filed an overbroad request and, after it was denied, argued that "the FBI should have used 'common sense' to limit the search[.]" Id. at *1. The D.C. Circuit rejected that argument, explaining that "FOIA places the burden of submitted a reasonably drafted request on the requester," and that "[a]n agency has no duty to narrow a request[.]" Id. Put another way, both National Security Counselors and Brody hold that the Government need not narrow a request for the plaintiff. They do not forbid the plaintiff from narrowing a request for the Government.

Still, Zorn is not likely to prevail on the merits of his revised request. He asks the agency to limit its new search to the emails of those employees who "engaged in the *ex parte* contacts." Yet, he does not identify any specific custodians who may have leaked the information. And DEA attests that it "is unaware (and could not feasibly become aware) of whether anyone engaged in the *ex parte* contacts that Plaintiff references." Davis Decl. ¶ 15. That attestation is

"accorded a presumption of good faith[.]" <u>SafeCard Servs., Inc. v. SEC</u>, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

To be sure, agencies generally are obligated to identify employees (or categories of employees) who are likely to possess relevant documents when designing a FOIA search. Here, however, Zorn's "narrowed" request would require DEA to ferret out employees who engaged in potentially improper communications with Dr. Sabet, by any means, before then limiting its search to the email files of those employees. In other words, Zorn asks the agency to narrow its FOIA search by conducting an internal leak investigation. Such an inquiry might fall within the bailiwick of an Inspector General. But Zorn cites no authority, and the Court is aware of none, that would obligate an agency's FOIA office to follow his proposed approach.

Without requiring the agency to first unmask suspected leakers, Zorn's "narrowed" search would be just as burdensome as the original one. DEA would still have to review all 456,551 potentially responsive emails to see if they contain evidence of improper contacts. Of course, Zorn may not know who engaged in *ex parte* contacts given that Dr. Sabet did not publicly name his DEA sources. But that does not relieve him of his burden to draft a reasonably tailored request. Because he did not do so, DEA likely is under no obligation to respond to either of his requests, and Zorn has not demonstrated a likelihood of success on the merits.

C. <u>Balance of Equities and Public Interest</u>

Finally, the balance of equities and public interest do not require granting an injunction here. Granting a preliminary injunction would jump Zorn's burdensome request to the front of the queue, delaying others' requests. That line-cutting is partially offset by the public's interest in revealing potential government wrongdoing. But that interest alone is not enough to obtain a preliminary injunction in a FOIA case. If it were, then preliminary injunctions would be

commonplace in FOIA cases, as most FOIA requests could be framed as an attempt to expose government misconduct.  After all, that is "little more than the core purpose of FOIA," which is "to allow the public to be informed about what their government is up to[.]"  <u>Wadelton v. Dep't of State</u>, 941 F. Supp. 2d 120, 124 (D.D.C. 2013) (cleaned up); <u>see also</u> <u>DOJ v. Reps. Comm. for Freedom of Press</u>, 489 U.S. 749, 773 (1989).  Without more, Zorn has not demonstrated that the equities favor granting an injunction.

### IV.    Conclusion

Zorn has not demonstrated that he faces irreparable injury, that he has a likelihood of success on the merits, or that the balance of equities and public interest favor granting an injunction.  It is hereby:

**ORDERED** that [2] Plaintiff's Motion for a Preliminary Injunction is **DENIED**.

**ORDERED** that [8] Defendants' Motion to Dismiss or in the Alternative for Summary Judgment is **DENIED AS MOOT**.  Defendants shall respond to [9] Plaintiff's Amended Complaint by February 2, 2025.

This is an appealable order.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: <u>January 6, 2025</u>